

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**FILED**

SEP − 6 2013

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

| | | |
|---|---|---|
| **David Cocroft** | ) | |
|      **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **RoundPoint Mortgage Servicing** | ) | |
| **Corporation, Pierce and Associates,** | ) | |
| **Richard M. Rosenbaum (In his** | ) | |
| **capacity as agent for Colonial Bank),** | ) | |
| **Hinshaw and Culbertson LLP,** | ) | |
| **Daniel L. Morriss (In his capacity as** | ) | |
| **agent for Taylor, Bean, and Whitacker** | ) | |
| **Mortgage Corp,),** | ) | |
|      **Defendants.** | ) | |

1:13-cv-06398
Judge James B. Zagel
Magistate Judge Jeffrey T. Gilbert

## C0MPLAINT

**NOW COMES** the Plaintiff, David Cocroft, submitting this **Complaint** stating as

follows:

### INTRODUCTION

1.  This Complaint is filed by the Plaintiff for redress against the named Defendants
    seeking damages and quieting of title. This Complaint is filed under the Federal
    Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.; to recover
    statutory damages, reasonable fees and costs, by reason of the Defendants
    violations of the FDCPA. Plaintiff also seek damages for the named Defendants
    violations of the 1) Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §
    2605 1(A) and (B), 2(A), (B) (C), and 3; 2) Illinois Consumer Fraud and
    Deceptive Practices Act (ICFA), 815 ILCS § 505/1 et seq.;

2.  This is also a Civil Conspiracy to Commit Fraud lawsuit resulting from the
    deceptive practices involved in the unauthorized use of Plaintiffs' identity in the
    creation of a purported loan, the filing of documents into the public record in

support of the purported loan, and the hiring of agents to collect damages for the alleged default of purported loan, in the Circuit Court of Cook County, Illinois.

3. This is also an Unlawful Clouding of Title and Quiet Title lawsuit resulting from fraudulent and deceptive practices in connection with the recording of a lien filed against Plaintiff home, in the Office of the Cook County Recorder of Deeds (CCRD). 720 ILCS § 5/32-13.

4. Plaintiff entered into a loan transaction with Taylor, Bean and Whitaker Mortgage Corp. who was closed in 2009, and later liquidated in bankruptcy. In September of 2009, Plaintiff received a notice stating that this loan was paid off. Through misrepresentation and fraud, one of the named Defendants, without consent, created a new loan to replace the paid off loan, and arbitrarily made Plaintiff a party to this purported loan. After repeatedly refusing to verify the validity of this purported loan, this Defendant later filed a foreclosure lawsuit against Plaintiff for the alleged default of this purported loan in the Circuit Court of Cook County, Illinois, in September 2012. The named Plaintiff in the foreclosure action is not this Defendant, it is a defunct bank that was closed and liquidated in August of 2009.

5. Plaintiff seek actual damages, statutory damages, punitive damages, quite title, and fees and costs of suit, for the named Defendants numerous violations as further stated herein.

## JURISDICTION

1. This Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2602.

2. This Court further has jurisdiction over Plaintiffs' FDCPA and RESPA claims pursuant to 15 U.S.C. § 1692 and 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 18 U.S.C. § 1367.

4. This Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391(b), 1394, 1395(a), 1408(1), 1409, and 1411, where the real estate interest of Plaintiff is located at 4852 Turner

Court, Country Club Hills, Illinois (Plaintiffs' home) is the subject matter of this proceeding and the Property is situated in this District. Venue lies in this District pursuant to the provisions of 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) in that Defendants have transacted business of a substantial and continuous character in this District, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Additionally, the ends of justice require that Defendants be brought before the Court pursuant to 18 U.S.C. § 1695(b).

6. This Court has jurisdiction over the named Defendants for the causes of action asserted herein arise from and is connected to the named Defendants transaction of business in this state

## PARTIES

1. Plaintiff is a natural person who resides at 4852 Turner Court Country Club Hills, Illinois. (Plaintiffs' Home).

2. RoundPoint Mortgage Servicing Corporation (RoundPoint) is a North Carolina corporation with an address of 5032 Parkway Plaza Boulevard, Suite 100, Charlotte, North Carolina. RoundPoint is being represented by Pierce and Associates, and Hinshaw and Culbertson LLP, in the foreclosure lawsuit against the Plaintiff in the Circuit Court of Cook County, Illinois.

3. Pierce and Associates is a law firm, licensed to practice law in the state of Illinois, with an address of 1 North Dearborn, Suite 1300, Chicago, Illinois.

4. Hinshaw and Culbertson LLP is a law firm, licensed to practice law in the state of Illinois, with an address of 222 North LaSalle Street Suite 300 Chicago, Illinois.

5. Richard M. Rosenbaum in his capacity as agent for Colonial Bank. Richard M. Rosenbaum is an attorney, licensed to practice law in Illinois, with a business addresses of 1 North Dearborn, Suite 1300, Chicago, Illinois.

6. Daniel L. Morriss in his capacity as agent for Taylor, Bean, and Whitacker Mortgage Corp. (TBW). Daniel L. Morriss is an attorney, licensed to practice law

in the state of Illinois, with a business address of 222 North LaSalle Street Suite 300 Chicago, Illinois.

7.   Defendant RoundPoint is an enterprise engaged in interstate commerce, as well as trade and commerce within the meaning of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 *et seq*.) in that RoundPoint participated in the schemes, directly or indirectly, resulting from the origination and/or delivery of mortgages in Illinois.

8.   All of the Defendants, are "debt collectors" as defined in 15 U.S.C. 1692 a(6), because each regularly use instrumentalities of interstate commerce and the mails in attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, namely, the alleged actual creditors TBW and Colonial Bank.

## FACTUAL ALLEGATIONS

### Facts Related To The Mortgage Foreclosure Action Against Plaintiff and Plaintiffs' Home In Case 12 CH 34114.

1.   On February 28, 2012, Plaintiff received a Notice of Default from Defendant, RoundPoint. True and copy attached. **Ex. 1. (Table of Exhibits on pg. 35.)**

2.   Therein, Notice of Default states, "Servicer is currently servicing your loan 1000033652 that is secured by the above referenced property," 4852 Turner Court, Country Club Hills, Illinois.

3.   On or around April 17, 2012, Plaintiff received Notice of Institution of Foreclosure proceedings dated April 9, 2012, for the alleged default of loan 1000033652, from TBW and RoundPoint former attorneys, Codillis and Associates, PC (Codillis). True and correct copy attached. **Ex. 2.**

4.   On April 21, 2012, Plaintiff disputed and requested validation of loan 1000033652 from TBW and RoundPoint, care of their attorneys, Codillis. True and correct copy attached. **Ex. 3.**

5.  On April 26, 2012, Plaintiff received correspondence from Codillis which stated, "We acknowledge receipt of your recent correspondence regarding the above file and have requested additional information from our client. Upon receipt of the information requested, we will provide the necessary response to your letter. Until that time, our file has been placed on hold." True and correct copy attached. **Ex. 4**.

6.  To date, Plaintiff has not received further response from Plaintiffs' Dispute and Request for Validation of Debt from TBW, RoundPoint, nor Codillis.

7.  On September 10, 2012, Complaint to Foreclose Mortgage (Complaint) was filed against Plaintiff and Plaintiffs' home, in the Circuit Court of Cook County, Illinois, case 12 CH 34114, by the Defendant, Pierce and Associates, on behalf of Colonial Bank, for the alleged default of loan 1000033652. True and correct copy attached. **Ex. 5, A, and B**.

8.  However, the mortgage and note attached to the Complaint are not identified as loan 1000033652. Ex. 5, A.

9.  The mortgage attached to the Complaint identifies the loan as loan 1786401. Ex. 5, A .

10. Note attached to Complaint as evidence of indebtedness provides one endorsement which appears to be a blank endorsement. **Ex. 5, B** page 5.

11. Endorsement appears to be from TBW executed by Executive Vice-President Erla Carter-Shaw.

12. In paragraph (j) of Complaint, Colonial Bank states "Capacity in which Plaintiff brings this suit: Plaintiff is the holder of the Mortgage and Note."

13. In paragraph (l) of Complaint, Statement as to amount due: Colonial Bank states, "the balance due on the Note and the Mortgage is the total of the principle balance of $572,000.00, plus interest, costs, and fees, and advances if any, made by the plaintiff."

14. In paragraph #4 of Complaint, counsel for Colonial Bank, Defendant Richard M. Rosenbaum of Pierce and Associates, states that counsel has made a "diligent inquiry."

15. On September 26, 2012, Plaintiff received Notice of Institution of Foreclosure proceedings, dated September 20, 2012, from Defendant, Pierce and Associates. True and correct copy attached. **Ex. 6.**

16. Notice of institution of foreclosure states, "Pierce and Associates was hired by RoundPoint Mortgage, the servicer of the above referenced mortgage loan to commence foreclosure proceedings." The loan is identified as loan 1000033652. The creditor of loan 1000033652 is identified as Colonial Bank.

17. On January 14, 2013, Plaintiff filed his Appearance, Motion for Sanctions Instanter, Motion to Dismiss Instanter and, Motion in Objection to Colonial Bank Motion for Default and Petition to Amend Complaint to Substitute Plaintiff.

18. On February 13, 2013, hearing was held on Colonial Bank Motion for Default and Petition to Amend the Complaint to Substitute plaintiff from Colonial Bank to TBW, and, on Plaintiffs' Motion for Sanctions Instanter, Motion to Dismiss Instanter and, Motion in Objection to Colonial Bank Motion for Default and Substitution of Plaintiff.

19. During the hearing on the respective motions, Plaintiff informed the Circuit Court that the mortgage and note attached to the complaint were not to the loan Plaintiff was noticed of being in default and that the Plaintiff rescinded the attached mortgage and note, loan 1786401, in the year of 2009.

20. Plaintiff also informed the Circuit Court that TBW claim against Plaintiff for the alleged default of loan 1786401 was barred by time and by *res judicata*.

21. In that TBW previously brought foreclosure action against Plaintiff in October of 2008 for the alleged default of loan 1786401 and their case was dismissed in October of 2009.

22. Plaintiff informed the Circuit Court that before TBW foreclosure action was dismissed, Plaintiff had received Notice that loan 1786401 was transferred from TBW to Colonial Bank in August of 2009.

23. Further, Plaintiff informed the Circuit Court that shortly thereafter, in September of 2009, Plaintiff received Notice from QBE Insurance that loan 1786401 was "Paid Off."

24. Plaintiff informed the Circuit Court that the facts surrounding case 12 CH 34114 were extensive which was why Plaintiff was late in filing his response to the Complaint.

25. After hearing Plaintiffs' oral argument, the Circuit Court set a briefing schedule for Colonial Bank response to all three of Plaintiffs' motions and ordered Plaintiff to file Plaintiffs' response to Colonial Bank Petition to Amend, and set a briefing schedule for Colonial Bank to respond thereto. True and correct copy attached. **Ex. 7.**

26. On March 12, 2013, Plaintiff filed an Objection to Petition to Amend.

27. On or around March 19, 2013, Plaintiff received Colonial Bank Motion for Extension of Time or Alternatively Grant Colonial bank Leave to File Amended Complaint from counsel Pierce and Associates.

28. On April 3, 2013, Colonial Bank filed its 2nd Motion for Extension of Time, by and through new counsel, Defendant Hinshaw and Culbertson LLP, requesting extension of "21 days up to and including April 24, 2013 to respond to the Motion to Dismiss Instanter."

29. Motion does not request extension of time to respond to Plaintiffs' other Motions and Objections as ordered to do so by the February 13th Circuit Court Order. Ex. 7.

30. After Colonial Bank failed to respond to Plaintiffs' Motions and Objections, on April 19, 2013, Plaintiff filed a Motion for Partial Summary Judgment on the issue of Sanctions.

31. On May 3, 2013, Plaintiff received TBW motion to amend Complaint, dated May 1, 2013, to substitute plaintiff from Colonial Bank to TBW. True and correct copy attached. **Ex. 12.**

32. TBW motion to amend Complaint alleges in paragraph 4, "the named plaintiff in the complaint, "Colonial Bank," was incorrect due to scriveners error, TBW now seeks leave to amend the complaint." Ex. 12.

33. On May 6th, the return date set forth in the February 13th Court Order, the Circuit Court granted leave for TBW to file amended Complaint by June 17, 2013.

34. However, the Circuit Court ordered TBW to title amended complaint as "Proposed Amended Complaint."

35. All other matters were entered and continued to September 30, 2013. True and correct copy attached. **Ex. 8.**

36. On June 18, 2013, counsel for TBW, Hinshaw and Culbertson LLP, filed Motion for Extension of Time to File Proposed Amended Complaint.

37. On June 18, 2013, counsel for TBW, Defendant Daniel L. Morriss, an attorney employed by Hinshaw and Culbertson LLP and signer of the complaint, filed or caused to be filed, Proposed Amended Complaint For Mortgage Foreclosure (Proposed Amended Complaint). True and correct copy attached. **Ex. 9,** A, B, and C.

38. Therein, TBW states on page two, paragraph 2, "Attached as Exhibit "A" is a true and exact copy of the First Mortgage; and as Exhibit "B" is a true and correct copy of the Initial Interest Rate Note ("Note 1") secured thereby." Ex. 9.

39. The loan documents attached to Proposed Amended Complaint are not to the alleged loan in default, loan 1000033652.

40. The documents attached to Proposed Amended Complaint are to loan 1786401. Ex. 9, A, B, and C.

41. Instead of attaching the Note as exhibit B, to Proposed Amended Complaint as stated on page two, paragraph two, as also required by Illinois Supreme Court Rule 113 (B), TBW attached, as exhibit B, the Initial Interest Adjustable Rate Rider. Ex. 9, B.

42. In paragraph (j), page two, of Proposed Amended Complaint, TBW states, "As of May 15, 2013, there is a total amount due under Note 1 from DAVID COCROFT to TBW in the amount of $878,749.26, plus attorney's fees and costs." Ex. 9.

43. In paragraph (o) of Proposed Amended Complaint TBW states "Capacity at which Plaintiff brings this foreclosure action: As legal holder of the indebtedness and holder of the First Mortgage which was pledged as security. Ex. 9.

44. In support of TBW alleged capacity to bring foreclosure action, attached to Proposed Amended Complaint as exhibit C, is the MERS 02-13-11 assignment of mortgage to loan 1786401, to TBW and, the MERS 11-14-2008 assignment of mortgage to loan 1786401, to TBW. True and correct copy attached Ex. 9, C.

45. On July 12, 2013, Plaintiff filed an Objection to TBW Motion for Extension of Time to File Proposed Amended Complaint.

46. On July 25, 2013, Plaintiff filed a Motion to Dismiss Instanter as Plaintiffs' initial response to Proposed Amended Complaint.

47. On August 2, 2013, Plaintiff filed a Motion for Sanctions Instanter.

48. To date, TBW has not responded to Plaintiffs' Motions or Objection.

49. The return date set for the respective Motions, Objection, and Proposed Amended Complaint is September 30, 2013, at 2pm, before Judge Lisa A. Marino.

**Facts Related To Loan #1786401**

1. In the year of 2007 Plaintiff acquired his interest in the Property.

2. On June 26, 2007 ("Settlement Date" or "Closing Date"), Plaintiff closed on a mortgage loan on the Property through TBW by executing a **Initial Interest Adjustable Rate Note** (Note). True copy is attached herein as **Ex. 10, B** (Note).

3. The Settlement Date mortgage loan transaction (the Loan) extended consumer credit to Plaintiff subject to a finance charge payable to TBW. **Ex.10.**

4. As part of the Loan, TBW retained a security interest in the Property. **Ex. 10, A** (Mortgage).

5. The Loan was for the acquisition of the Plaintiffs' home located at 4852 Turner Court, Country Club Hills, Illinois.

6. The Loan has a 30 year maturity in the principle amount of $572,000.00 with an Initial interest rate of 6.25% for a five year period and a variable rate every twelve months thereafter. **Ex. 10, B**.

7. Per the Mortgage and Note, the Lender is TBW. Ex. 10, A (D), 10, B 1.

8. Per the Mortgage, MERS is the mortgagee solely as nominee for TBW, and TBW successors and assigns. Ex. 10, A (C).

9. At Closing Plaintiff was informed that MERS was not the lender, but was simply a company to provide alternate means of registering the Loan in public records.

10. At Closing, the Loan was identified as loan 1786401 which is the shortened version of the Mortgage Identification Number 1000295-0001**1786401**-2. **Ex. 10, A** Pg. 1.

11. Pursuant to the language stated within the Mortgage and Note to loan 1786401, there are no provisions stated therein which allow for neither the creation of a new loan out of the existing loan nor the altering of the existing loan number. **Ex. 10, A** and **B**. Mortgage and Note.

12. On October 30, 2008, TBW filed foreclosure action against Plaintiff for the alleged default of loan 1786401, in the Circuit Court of Cook County, Illinois, case 08 CH 40952. True and correct copy attached. **Ex. 11**.

13. On, November 14, 2008, MERS executed assignment of the mortgage, to loan 1786401, to TBW. True and correct copy attached. **Ex. 12**.

14. In August of 2009, Plaintiff received Notice of Transfer of loan 1786401 from TBW to Colonial Bank, dated August 12, 2009. Notice indicated the effective date of transfer as August 10, 2009. True and correct copy attached. **Ex. 13**.

15. On August 19, 2009, Plaintiff delivered to TBW and Colonial Bank, Cease and Desist letter regarding the rescission of loan 1786401. True and correct copy attached. **Ex. 14**.

16. To date, Plaintiff has not received a response from TBW to Plaintiffs' Cease and Desist letter.

17. On August 21, 2009, Plaintiff delivered to RoundPoint Cease and Desist letter regarding the rescission of loan 1786401. True and correct copy attached. **Ex. 15**.

18. On or around August 29, 2009, Plaintiff received correspondence from RoundPoint acknowledging receipt of Plaintiffs' Cease and Desist letter. True and correct copy attached. **Ex. 16**.

19. Therein RoundPoint correspondence dated August 24, 2009, RoundPoint states "Per your request, we will review the matters set forth in your letter. We have forwarded your information to our legal team and someone from that area will respond to you within the next fifteen days." Thereafter, Servicer discontinued

sending statements to Plaintiff regarding loan 1000033652 for the following 6-12 months. **Ex. 16**.

20. To date, Plaintiff has not received further response to Plaintiffs' Cease and Desist letter from RoundPoint legal team.

21. On or around September 14, 2009, Plaintiff received notice from QBE Insurance referencing TBW, Plaintiff, loan 1786401, and Plaintiffs' home, informing Plaintiff that loan 1786401 was "Paid Off". True and correct copy attached. **Ex. 17. 1**.

22. It appears from the QBE Insurance notice that through an undisclosed transaction, loan 1786401 was paid off at some point prior to the date of the QBE Insurance notice, dated September 11, 2009. Ex. 17.

23. Thereafter, Plaintiff filed Motion to Dismiss case 08 CH 40952 on October 9, 2009.

24. On October 15, 2009, at the very beginning of oral arguments on Plaintiffs' Motion to Dismiss, counsel for TBW, Codillis, moved the Court to voluntarily dismiss case 08 CH 40952.

25. Counsel for TBW informed the Circuit Court that Codillis had received Plaintiffs' Motion and its attachments and that the F.D.I.C. was appointed as receiver over the assets of Colonial Bank and that he was ordered by the F.D.I.C. not to continue foreclosure action against the Plaintiff.

26. The Circuit Court asked Plaintiff if Plaintiff had any objections. Plaintiff requested that the case be dismissed with prejudice.

27. The Circuit Court denied Plaintiffs' request for dismissal with prejudice stating that the Court would wait to see what the F.D.I.C. would do.

28. Counsel oral motion to dismiss case 08 CH 40952 was granted October 15, 2009. True and correct copy attached. **Ex. 18**.

---

1. It is not known to Plaintiff who paid off loan 1786401. It appears from the language in the QBE Insurance notice that through an undisclosed transaction, such as Mortgage Default Insurance Policy, Credit Default Insurance Policy, Credit Default Swap Policy, Hedge Fund Policy, the F.D.I.C., and/or U.S. Government T.A.R.P. Bailout, loan 1786401 was "Paid Off" prior to the notice date of September 11, 2009.

29. On February 13, 2011, MERS executed 2nd assignment of the mortgage, to loan 1786401, to TBW. True and correct copy attached. **Ex. 19.**

**Facts Related To RoundPoint Loan 1000033652**

1. On or around August 17, 2009, Plaintiff received Change of Servicing Notice from Defendant RoundPoint informing Plaintiff that TBW will no longer be servicing loan 1786401. True and correct copy attached. **Ex. 20.**

2. Change of Servicing Notice reflects two loan numbers, loan 1786401 and, loan 1000033652 which was created by RoundPoint. Ex. 20.

3. Plaintiff has never completed a financial transaction with anyone for a loan 1000033652.

4. Plaintiff has never authorized anyone to use Plaintiffs' personal identifying information to enter into an agreement with anyone for a loan 1000033652.

5. Prior to August 17, 2009, Plaintiff was unaware of the existence of a loan 1000033652.

6. Authority is not given to RoundPoint to create a new loan, nor a new loan number, neither from the Mortgage nor the Note to loan 1786401 to which it appears to rely upon.

7. RoundPoint has failed to provide to Plaintiff a viable legal basis for the source of its authority to create loan 1000033652.

8. RoundPoint has failed to provide to Plaintiff a viable legal basis for the source of its authority to make Plaintiff a party to loan 1000033652.

9. RoundPoint has failed to provide to Plaintiff a viable legal basis for the source of its authority to secure loan 1000033652 against Plaintiffs' home.

10. On February 8, 2012, Plaintiff delivered to RoundPoint a Qualified Written Request (Q.W.R.), pursuant to R.E.S.P.A., to ascertain certain information regarding the servicing and other information of purported loan 1000033652. True and correct copy attached. **Ex. 21.**

11. To date, RoundPoint has ignored Plaintiffs' Q.W.R. in that RoundPoint has not responded to Plaintiffs' Q.W.R...

12. Instead of receiving a response from RoundPoint to Plaintiffs' Q.W.R., on February 28, 2012, Plaintiff received a Notice of Default from RoundPoint for Plaintiffs' alleged default of loan 1000033652. **Ex. 1**.

13. Notice of Default states, "Servicer is currently servicing your loan 1000033652, that is secured by the above referenced property," 4852 Turner Court, Country Club Hills, Illinois. Ex. 1.

14. On or around April 17, 2012, Plaintiff received Notice of Institution of Foreclosure proceedings dated April 9, 2012, for the alleged default of loan 1000033652, from TBW and RoundPoint former attorneys, Codillis . **Ex. 6.**

15. On April 21, 2012, Plaintiff disputed and requested validation of loan 1000033652 from TBW and RoundPoint, care of Codillis. **Ex. 8.**

16. On April 26, 2012, Plaintiff received correspondence from Codillis which stated, "We acknowledge receipt of your recent correspondence regarding the above file and have requested additional information from our client. Upon receipt of the information requested, we will provide the necessary response to your letter. Until that time, our file has been placed on hold." **Ex. 9**.

17. To date, Plaintiff has not received response from Plaintiffs' Dispute and Request for Validation of loan 1000033652 from TBW, RoundPoint, nor Codillis.

18. On September 26, 2012, Plaintiff received Notice of Institution of Foreclosure proceedings, dated September 20, 2012, from the law firm of Pierce and Associates. **Ex. 6**.

19. Notice of institution of foreclosure states, "Pierce and Associates was hired by RoundPoint Mortgage, the servicer of the above referenced mortgage loan to commence foreclosure proceedings." The loan is identified as loan 1000033652. The creditor is identified as Colonial Bank. Ex. 6.

20. RoundPoint has made repeated attempts to solicit Plaintiff to enter into an agreement with RoundPoint for loan 1000033652 after Complaint was filed. **Ex. 22.** 2.

---

2. To avoid bulk, only pages 1-3 are attached to RoundPoint Offers to Modify purported loan 1000033652. Complete Offers are available upon request.

21. The last three offers Plaintiff has received to contract with RoundPoint for loan 1000033652 are dated 12/04/12, 10/30/2012, and 09/25/12. True and correct copy attached.

## Facts related to TBW

1. In August of 2009, TBW was closed by the F.B.I. and F.D.I.C. for fraud.
2. The F.D.I.C. was appointed as Receiver over TBW assets.
3. Prison terms were ordered. True and correct copy attached. **Ex 23**.
4. August 24, 2009, TBW filed chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida, case #3:09-bk-1077047-JAF. **Ex. 30**.
5. TBW did not disclose the mortgage and note to loan 1786401 as an asset in TBW asset schedules A, B, or C, to the U.S. Bankruptcy Trustee. True and correct copy attached. **Ex. 24**. 3.
6. TBW assets were later liquidated in bankruptcy. The effective date of TBW 3rd Amended Joint Plan of Liquidation is August 10, 2011. True and correct copy attached. **Ex. 25.** 4.

## Facts related to Colonial Bank

1. On August 14, 2009, Colonial Bank was closed by the Alabama State Banking Department for fraud. True and correct copy attached. **Ex. 26** and **Ex. 27**. 5.
2. Prison terms were ordered. True and correct copy attached. **Ex. 28**.

---

3. To avoid Bulk, only page 1 to TBW assets disclosure schedules A, B, and C, are attached. Complete schedules are available upon request. The web address to review TBW bankruptcy case is www.bmcgroup.com. Ex. 24.
4. To avoid Bulk, only page I of Confirmation Order, page 1 of 3rd Amended Liquidation Plan, and page 1 of 2nd Amended Liquidation Plan are attached. Complete Confirmation Order and Complete Liquidation Plans, are available upon request. The web address to review TBW bankruptcy case is www.bmcgroup.com. Ex. 25 and 29.
5. Information on Colonial Bank being closed and its assets sold by the F.D.I.C. to BB & T, is on page 3 of Opinion of the Court. Ex. 26.

3. The F.D.I.C. was appointed Receiver over Colonial Bank on August 14, 2009. Ex. 27.

4. Under receivership, F.D.I.C. sold Colonial Bank assets to Branch Banking and Trust (BB&T) on August 14, 2009. Ex. 26 and 27.

**Facts Related to Purported Liens on Plaintiffs' Title**

1. On November 14, 2008, MERS, as Nominee for TBW, executed assignment of the Mortgage, to loan 1786401, to TBW.

2. MERS 11-14-2008 assignment to TBW was recorded at Cook County Recorder of Deeds (CCRD) on December 10, 2008, as Document #0834504171. **Ex. 12.**

3. MERS 11-14-2008 assignment appears to have been signed by MERS Vice-President, Erla Carter-Shaw.

4. On February 13, 2011, MERS, as Nominee for TBW, executed purported assignment of the Mortgage/Deed of Trust, to loan 1786401, to TBW.

5. MERS 02-13-2011 purported assignment to TBW was recorded at the CCRD on March 15, 2011, as Document #1107403026. **Ex. 19.**

6. MERS 02-13-2011 purported assignment appears to have been signed by MERS Vice-President, Melissa Long.

## CLAIMS
## COUNT 1

**Fair Debt Collections Act Violations (FDCPA)** – As against Defendants RoundPoint, Pierce and Associates, Richard M. Rosenbaum (In his capacity as agent for Colonial Bank and signer of Complaint to Foreclose Mortgage), Hinshaw and Culbertson LLP, Daniel L. Morriss (In his capacity as agent for TBW and signer of Proposed Amended Complaint)

1. Plaintiff re-states and incorporates the following sections herein: Introduction, Jurisdiction, Parties, and Factual Allegations.

2. The FDCPA, codified as 15 U.S.C. § 1692 – 1692p, is a consumer protection amendment, establishing legal protection from abusive debt collection practices to the Consumer Credit Protection Act. The statute's stated purposes are: to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to insure the information's accuracy.

3. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act.

4. Section 803 of the FDCPA, 15 U.S.C. § 1692a (6) states, "the term "debt Collector" means any person who uses any instrumentality or interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6), such term also includes any person who uses any instrumentality or interstate commerce or the mails in any business the principle purpose of which is the enforcement of security interests. 6.

---

6. In Notice of Change of Servicer, Ex. 20, which Plaintiff received from Defendant RoundPoint August of 2009, RoundPoint created a new loan, purported loan 1000033652, and arbitrarily made Plaintiff a party to said loan. In doing so, RoundPoint arbitrarily declared itself to be Plaintiffs' creditor. The subsequent parties named in the two foreclosure complaints in the Circuit Court, are names of mere straw men, used in a scheme to collect multiple payments for loan 1786401.

5. Pursuant to section 803 of the FDCPA, 15 U.S.C. § 1692a (6), each of the named defendants are debt collectors in that each named Defendants uses instrumentalities of interstate commerce, and the mails, in each of their respective business, for the collection of debts. Each of the Defendants regularly collects or attempt to collect debts, directly or indirectly, debts owed or due or asserted to be owed or due another.

6. Defendants Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, are all debt collectors according to 15 U.S.C. § 1692a (6).

7. In that Defendants Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, regularly, in the course of their respective business as legal representatives, collects or attempts to collect debts or their clients using instrumentalities of interstate commerce, and the mails, for the collection of debts

8. Defendant RoundPoint is a debt collector, according to 15 U.S.C. § 1692a (6).

9. In that Defendant RoundPoint, regularly, in the course of its business, collects or attempts to collect debts, using instrumentalities of interstate commerce, and the mails, for the principle purpose of which is the collection of debts.

10. Further, according to 15 U.S.C. § 1692a (6), the term "debt collector" includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

11. Plaintiffs' FDCPA violation claims arise from Defendant RoundPoint actions to collect purported loan 1000033652, to which, Plaintiff was arbitrarily made a party to without legal foundation.

12. Defendant RoundPoint has alleged that Plaintiff is in default of purported loan 1000033652 and a foreclosure action was brought against Plaintiff, by and through its agents, Defendants Pierce and Associates and Richard M Rosenbaum, for the alleged default of purported loan 1000033652.

13. Purported loan 1000033652 was created by RoundPoint to replace loan 1786401, to which, Plaintiff had received Notice that loan 1786401 was previously "Paid Off" in September of 2009. **Ex. 17** and **20**. **Facts** related to Loan 1000033652, 1-21. **Facts** related to Loan 1786401, 21-22.

14. In furtherance of this scheme, RoundPoint and its agents, uses the names of defunct businesses, who have long been closed by the F.B.I. and regulatory authorities, and liquidated by the F.D.I.C. and in bankruptcy, as the plaintiffs' and injured parties in the original, and amended complaints filed in case 12 CH 34114, in the Circuit Court of Cook County, Illinois. **Ex. 5** and **9.**

15. No contract exists for purported loan 1000033652 between Plaintiff and any other party. **Facts** related to Loan 1000033652, 1-9.

16. Thus, as a substitute, the documents to loan 1786401 were attached to the original and amended complaints as evidence of Plaintiffs' indebtedness for loan 1000033652. **Ex. 5 A** and **B**, **9 A, B,** and **C.**

17. The issue of Plaintiffs' alleged default of loan 1786401 was previously litigated by TBW, in case 08 CH 40952, in the Circuit Court of Cook County. **Ex. 11.**

18. Case 08 CH 40952 was dismissed in October of 2009. **Ex. 18.**

19. To date, RoundPoint and its agents have ignored Plaintiffs attempts to obtain any information regarding purported loan 1000033652. **Ex. 3.**

20. Thus far, Defendants Pierce and Associates and Hinshaw and Culbertson, have not responded to Plaintiffs motions, or objections, in the foreclosure action, as ordered to do so by the Circuit Court. **Ex. 7.**

21. Plaintiff therefore has filed his complaint, alleging FDCPA violations by the Defendants, in the U.S. District Court for the Northern District of Illinois.

22. Section 806 of the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

23. Defendants RoundPoint, Pierce and Associates, and attorney Richard M. Rosenbaum, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, under the guise of a defunct business,

Colonial Bank, filed or caused to be filed, a foreclosure complaint against Plaintiff for Plaintiffs' alleged default of purported loan 1000033652, thereby forcing Plaintiff to defend himself against a foreclosure action for the alleged default of an unauthorized loan. **Ex. 5, 6, 26,** and **27. Facts** related to Foreclosure Action 1 - 16. **Facts** related to Colonial Bank 1-4.

24. Defendants RoundPoint, Pierce and Associates, and attorney Richard M. Rosenbaum, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants defaulted on the agreement made by RoundPoint former agent, Codillis, to place the filing of foreclosure action against Plaintiff on "hold" until Plaintiff was provided the necessary response to Plaintiffs' Dispute and Request for Validation of Debt. **Ex. 2 - 6. Facts** related to Foreclosure Action 1-7.

25. Defendants Pierce and Associates and attorney Richard M. Rosenbaum, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, as agents of RoundPoint, filed or caused to be filed, Complaint to Foreclose Mortgage against Plaintiff for Plaintiffs' alleged default of the purported loan 1000033652, before first verifying the existence of a contractual agreement between Plaintiff and Colonial Bank for purported loan 1000033652. **Ex. 5. Facts** related to Loan 1000033652, 1-21.

26. Defendants Pierce and Associates and attorney Richard M. Rosenbaum, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, as agents of RoundPoint, filed or caused to be filed, Complaint to Foreclose Mortgage against Plaintiff, on behalf of Colonial Bank, before first verifying the legal status of Colonial Bank. **Ex. 5, 26,** and **27. Facts** related to Colonial Bank 1-4.

27. Defendants Pierce and Associates and attorney Richard M. Rosenbaum, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, as agents of RoundPoint, filed or caused to be filed, Complaint to Foreclose Mortgage, allegedly on behalf of Colonial Bank, against Plaintiff, for Plaintiffs' alleged default of purported loan 1000033652 and substituted loan documents for purported loan 1000033652 with loan documents for loan

1786401 and attached said loan document to Complaint to Foreclose Mortgage apparently as evidence of Colonial Bank capacity and standing to bring suit. **Ex. 5A, B, 26,** and **27. Facts** related to foreclosure action 7-9. **Facts** related to Colonial Bank 1-4.

28. Defendants Hinshaw and Culbertson LLP and attorney Daniel L. Morriss, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, as agents of RoundPoint, in continuation of the Deceptive acts of Pierce and Associates, filed or caused to be filed, Proposed Amended Complaint against Plaintiff, allegedly on behalf of TBW, without first verifying the legal status of TBW, and TBW relationship to the purported loan 1000033652 and, TBW relationship to loan 1786401. **Ex. 9 A, C, 17, 24,** and **25. Facts** related to Foreclosure Action 37-44. **Facts** related to TBW 1-6.

29. Defendants Hinshaw and Culbertson LLP and attorney Daniel L. Morriss, violated Plaintiffs' rights under Section 806 of the FDCPA, 15 U.S.C. § 1692d, when Defendants, as agents of RoundPoint, in continuation of the deceptive acts of Pierce and Associates and attorney Richard M. Rosenbaum, filed or caused to be filed, Proposed Amended Complaint, allegedly on behalf of TBW, against Plaintiff, for Plaintiffs' alleged default of purported loan 1000033652. and substituted loan documents for purported loan 1000033652 with loan documents for loan 1786401 and attached said loan documents to Proposed Amended Complaint apparently as evidence of TBW capacity and standing to bring suit. The issue of Plaintiffs' alleged default of loan 1786401 was previously litigate by TBW, in case 08 CH 40952 in the Circuit Court of Cook County. Case 08 CH 40952 was dismissed in October of 2009. **Ex. 9A, C, 11, 17,** and **18. Facts** related to foreclosure action 37-44. **Facts** related to loan 1786401, 12-28. **Facts** related to TBW 1-6.

30. The Defendants actions, or a lack thereof, as stated in paragraphs 23-29, are a violation of Section 806 of the FDCPA, 15 U.S.C. § 1692d, in that Defendants actions have harassed and oppressed Plaintiff.

31. Section 807 of the FDCPA, 15 U.S.C. § 1692e, states, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

32. Defendants RoundPoint and Pierce and Associates violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A), and (10), when Pierce and Associates, as agent of RoundPoint, falsely represented to Plaintiff in Notice of Institution of Foreclosure proceedings, the character, and legal status, of purported loan 1000033652-FNF and that of RoundPoint relationship to Plaintiff, and to Plaintiffs' home, when stated that, "This office has been hired by ROUNDPOINT MORTGAGE, the Servicer of the above referenced mortgage Loan to commence foreclosure proceedings." The loan referenced to is "Loan 1000033652-FNF." The property referenced to is "Property address 4852 Turner Country Club Hills, IL 60478." **Ex. 2, 26,** and **27. Facts** related to Loan 1000033652, 1-9. **Facts** related to Colonial Bank 1-4.

33. Defendants RoundPoint and Pierce and Associates violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A)(B), (10), and (14), when Pierce and Associates, as agent of RoundPoint, falsely represented to Plaintiff in Notice of Institution of Foreclosure proceedings, the character, and legal status, of purported loan 1000033652-FNF and that of Colonial Bank relationship to Plaintiff, and to Plaintiffs' home, when stated "1. The total amount of the debt due on the Mortgage and Note as of the date of this letter, is $849,662.76. Because of interest, late charges, and other charges that may vary from day to day the amount due on the day you pay this amount may have increased. 2. The name of the current Creditor to whom the debt is owed is Colonial Bank." **Ex. 2, 26,** and **27. Facts** related to Loan 1000033652, 1-9. **Facts** related to Colonial Bank 1-4.

34. Defendants RoundPoint, Pierce and Associates and, attorney Richard M Rosenbaum as the signer of the Complaint, violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A)(B), (10), and (14), when Pierce and Associates and attorney Richard M.Rosenbaum, as agents of RoundPoint, filed or caused to be filed, Complaint to Foreclose Mortgage

against the Plaintiff, allegedly on behalf of Colonial Bank, falsely represented to Plaintiff, and to the Circuit Court of Cook County, the character, and legal status of purported loan 1000033652-FNF and its relationship to loan 1786401, the legal status of Colonial Bank and Colonial Bank relationship to loan 1786401, and the relationship of Colonial Bank and loan 1786401 to Plaintiff, and to Plaintiffs' home, when stated in paragraph (j) of Complaint, Colonial Bank states "Capacity in which Plaintiff brings this suit: Plaintiff is the holder of the Mortgage and Note." **Ex. 5 A, B, 17, 26, and 27. Facts** related to Foreclosure 7 and 12. **Facts** related to Loan 1000033652, 1-9. **Facts** related to Colonial Bank 1-4.

35. Defendants RoundPoint, Pierce and Associates, and attorney Richard M. Rosenbaum as the signer of the Complaint, violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A)(B), (10), and (14), when Pierce and Associates and attorney Richard M. Rosenbaum, as agents of RoundPoint, falsely represented to Plaintiff, and to the Circuit Court of Cook County, in Complaint to Foreclose Mortgage, the character, and legal status of purported loan 1000033652-FNF and its relationship to loan 1786401, the legal status of Colonial Bank, and the relationship of Colonial Bank to loan 1786401, and the relationship of Colonial Bank and loan 1786401 to Plaintiff, and to Plaintiffs' home, when stated in paragraph (l) of Complaint, Statement as to amount due: Colonial Bank states, "the balance due on the Note and the Mortgage is the total of the principle balance of $572,000.00, plus interest, costs, and fees, and advances if any, made by the plaintiff." **Ex. 5 A, B, 17, 26, and 27. Facts** related to Loan 1786401, 11, 21, 22, and 24. **Facts** related to Loan 1000033652, 1-9. **Facts** related to Colonial Bank 1-4.

36. Defendants Hinshaw and Culbertson LLP and attorney Daniel L. Morriss, as the signer of Proposed Amended Complaint, violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A)(B), (10), and (14), when Defendants, as agents of RoundPoint, filed or caused to be filed, Proposed Amended Complaint against Plaintiff, allegedly on behalf of TBW, falsely represented to Plaintiff, and to the Circuit Court of Cook County, in Proposed

Amended Complaint, the character, and legal status of purported loan 1000033652-FNF and its relationship to loan 1786401, the legal status of TBW, the relationship of TBW to loan 1786401, and the relationship of TBW and loan 1786401 to Plaintiff, and to Plaintiffs' home, when stated in paragraph (j), page two, of Proposed Amended Complaint, TBW states, "As of May 15, 2013, there is a total amount due under Note 1 from DAVID COCROFT to TBW in the amount of $878,749.26, plus attorney's fees and costs." **Ex. 9A, C, 17, 24,** and **25. Facts** related to Loan 1786401, 11, 12, 21, 22, and 24. **Facts** related to Loan 1000033652, 1-9. **Facts** related to TBW 1-6.

37. Defendants Hinshaw and Culbertson LLP and Daniel L. Morriss, as the signer of Proposed Amended Complaint, violated Plaintiffs' rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(2)(A)(B), (10), and (14), when Defendants, as agents of RoundPoint, falsely represented to Plaintiff, and to the Circuit Court of Cook County, in Proposed Amended Complaint, the character, and legal status of purported loan 1000033652-FNF and its relationship to loan 1786401, the legal status of TBW, the relationship of TBW to loan 1786401, and the relationship of TBW and loan 1786401 to Plaintiff, and to Plaintiffs' home, when stated in paragraph o) of Proposed Amended Complaint, TBW states "Capacity at which Plaintiff brings this foreclosure action: As legal holder of the indebtedness and holder of the First Mortgage which was pledged as security. **Ex. 9A, C, 17, 24,** and **25. Facts** related to Loan 1786401, 11, 12. 21, 22, and 24. **Facts** related to Loan 1000033652, 1-9. **Facts** related to TBW 1-6.

38. Defendant RoundPoint violated Plaintiffs rights under Section 807 of the FDCPA, 15 U.S.C. § 1692e(8), when Defendant communicated credit information regarding purported loan 1000033652, to the credit reporting agencies of Plaintiffs' alleged non-payment , knowing or should have known, that such information was false. Facts related to Loan 1000033652, 1-21.

39. Section 808 of the FDCPA, 15 U.S.C. § 1692f, states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

**40.** Defendants RoundPoint, Pierce and Associates and attorney Richard M. Rosenbaum as the signer of the complaint, violated Plaintiffs' rights under Section 808 of the FDCPA, 15 U.S.C. § 1692f(1), when Defendants, as agents of RoundPoint, filed or caused to be filed, Complaint to Foreclose Mortgage against Plaintiff, allegedly on behalf of Colonial Bank, falsely represented to Plaintiff, and to the Circuit Court of Cook County, that the alleged loan in default, purported loan 1000033652, to which Plaintiff had received Notices for, and loan 1786401, are one and the same loan. As evidenced by the exhibits attached to the Complaint and the statements in paragraph j) and o) in the Complaint. **Ex. 1, 5, 6**. **Facts** related to Foreclosure 7-9. **Facts** related Loan 1000033652, 1-9. **Facts** related to Loan 1786401, 10 and 11. **Facts** related to Colonial Bank 1-4.

**41.** Defendant Hinshaw and Culbertson LLP and Daniel L. Morriss, as the signer of Proposed Amended Complaint, violated Plaintiffs' rights under Section 808 of the FDCPA, 15 U.S.C. § 1692f(1), when Defendants filed, or caused to be filed, Proposed Amended Complaint against Plaintiff, allegedly on behalf of TBW, falsely represented to Plaintiff, and to the Circuit Court of Cook County, that the alleged loan in default, purported loan 1000033652, and loan 1786401, are one and the same loan. As evidenced by the exhibits attached to the Proposed Amended Complaint and the statements in paragraph j) and o) in the Proposed Amended Complaint. **Ex. 1, 5, 6**, and **17**. **Facts** related to Foreclosure 7-9. **Facts** related Loan 1000033652, 1-9. **Facts** related to Loan 1786401, 10 and 11. **Facts** related to TBW 1-6.

**42.** Section 809 of the FDCPA, 15 U.S.C. § 1692g(b), states, " if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is

mailed to the consumer by the debt collector.

43. All of the named Defendants violated Plaintiffs' rights under Section 809 of the FDCPA, 15 U.S.C. § 1692g(b), when the Defendants filed or caused to be filed, Complaint to Foreclose Mortgage and Proposed Amended Complaint, in the Circuit Court of Cook County, case 12 CH 34114 and, when Defendants defaulted on the agreement made by RoundPoint former agent, Codillis, to place the filing of foreclosure action against Plaintiff on "hold" until Plaintiff was provided the necessary response to Plaintiffs' Dispute and Request for Validation of Debt. **Ex. 3, 4, 5,** and **9. Facts** related to Foreclosure Action 3-7.

44. Defendants have used unfair and unconscionable means in their attempts to Collect a purported debt from Plaintiff, a debt which Plaintiff has not authorized.

45. Plaintiff has been injured by the Defendants actions.

46. Plaintiff has been harassed and oppressed into investing 416 hours in research, and in the drafting and filing of pleadings, to defend himself against the foreclosure action brought against Plaintiff in the Circuit Court of Cook County.

47. Defendants are liable to Plaintiff for damages as a result of Defendants violations of the FDCPA pursuant to 15 U.S.C. § 1692K.

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court award Plaintiff actual damages, statutory damages, and punitive damages.

## COUNT 2

**Violation of the Real Estate Settlement Procedures Act Violations. (RESPA)
Failure to respond to Q.W.R. –** As against Defendant RoundPoint

1. Plaintiff re-states and incorporates the following sections herein: Introduction, Jurisdiction, Parties, and Factual Allegations.

2. Loan 1786401, as it relates to Plaintiff, is a federal related mortgage loan per RESPA 12 U.S.C. § 2602(1). TBW purported funding and origination of loan

1786401 is classified as a settlement service under RESPA 12 U.S.C. § 2601(3), and 12 C.F.R. § 3500.21(e)(3).

3. Purported loan 1000033652 apparently grew out of loan 1786401. RESPA is therefore applicable here.

4. The RESPA aims to effect more effective disclosure to home purchasers of settlement costs, seeking to eliminate kickbacks and referral fees.

5. The Act creates guidelines under which Servicers have a duty to respond to borrowers inquiries, 12 U.S.C. § 2605(e)(1)(A)(B)(2)(A)(B)(C)(3).

6. As previously mentioned herein, Plaintiff forwarded his Q.W.R. to Defendant RoundPoint on February 8, 2012 to ascertain certain information regarding the servicing and other information of purported loan 1000033652. **Ex. 21**.

7. Defendant RoundPoint failed to respond to the Q.W.R. in violation of 12 U.S.C. § 2605(e)(2) & 24 C.F.R. § 3500.21(e)(3).

8. Pursuant to 12 U.S.C. § 2605(e)(2) & 24 C.F.R. § 3500.21(e)(3), RoundPoint had a duty to respond and disclose the information requested in Plaintiffs' Q.W.R.

9. Defendant RoundPoint is thereby liable to Plaintiff for statutory damages and litigation costs. 12 U.S.C. § 2605(3)(f)(1).

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court award Plaintiff statutory damages and litigation expenses, and cost of suit pursuant to Defendant RoundPoint Q.W.R. RESPA violation.

## COUNT 3

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA)** – As against Defendants RoundPoint, Pierce and Associates, Richard M. Rosenbaum (in his capacity as agent for Colonial Bank and signer of Complaint to Foreclose Mortgage), Hinshaw and Culbertson, and Daniel L. Morriss (in his capacity as agent for TBW and signer of Proposed Amended Complaint).

1. Plaintiff re-states and incorporates the following sections herein: Introduction, Jurisdiction, Parties, and Factual Allegations.

2. Illinois Consumer Fraud and Deceptive Business Practices Act declares unlawful conduct: Unfair or Deceptive acts or practices, including but not limited to, the use of any deception, fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of any material fact, in the conduct of any trade or commerce. 815 ILCS § 505/1 - § 505/12.

3. Banking and credit activities are included in the course of conduct of trade or commerce for purposes of the Illinois ICFA statute.

4. Plaintiffs' ICFA violation claims arise from the actions , and reactions, of Defendant RoundPoint, and its agents, Defendants Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L.Morriss, in the collection attempts of purported loan 1000033652 through a foreclosure action filed against Plaintiff September 10, 2012. **Ex. 5 A, B, 9 A, B,** and **C. Facts** related to foreclosure action 1-48.

5. Plaintiff received Notice from QBE Insurance notifying Plaintiff of the status of loan 1786401 as being "Paid Off" in September of 2009. **Ex. 17. Facts** related to loan 1786401, 21-22.

6. In August of 2009, Plaintiff received Notice of Change of Servicer indicating that Defendant RoundPoint will be the servicer of loan 1000033652. **Ex. 20. Facts** related to purported loan 1000033652, 1-21.

7. Plaintiff was arbitrarily made a party to purported loan 1000033652 without Plaintiffs' consent, and without any legal foundation. **Ex. 1, 2, 6,** and **22.**

8. Plaintiff has never completed a financial transaction with anyone for purported loan 1000033652.

9. In February of 2012, Plaintiff received Notice of Default of purported loan 1000033652. Notice indicated that Defendant RoundPoint was the servicer of purported loan 1000033652 that is secured by Plaintiffs' home. Facts related to purported loan 1000033652, 1-21.

10. Notice indicated that Plaintiff was in Default of purported loan in the amount of $256, 223.56. Ex. 1.

11. In April of 2012, Plaintiff received Notice of the Institution of Foreclosure proceedings from Defendant RoundPoint former law firm, Codillis, for Plaintiffs' alleged default of purported loan 1000033652. Ex. 2.

12. In September of 2012, Plaintiff received Notice of the Institution of Foreclosure proceedings from Defendant RoundPoint former law firm, Pierce and Associates, for Plaintiffs' alleged default of purported loan 1000033652-FNF. Ex. 6.

13. Inexplicably attached to Complaint to Foreclose Mortgage, filed September 10, 2012, and Proposed Amended Complaint, filed June 18, 2013, are the loan documents to loan 1786401. Ex. 5 A and B, 9 A, B, and C.

14. Pursuant to the language stated within the Mortgage and Note to loan 1786401, to which RoundPoint appears to rely upon, there are no provisions stated therein which allow for neither the creation of a new loan out of the existing loan, nor the altering of the existing loan number. **Ex 10, A** and **B**. Mortgage and Note.

15. The alleged plaintiff named in the Complaint to Foreclose Mortgage, Colonial Bank, legally ceased to exist on August 14, 2009. **Ex. 26** (pg. 3 of Opinion of Court), **27**.

16. Colonial Bank was closed for fraud in August 14, 2009 by the Alabama State Banking Department and liquidated by the F.D.I.C. on the same day. **Facts** related to Colonial Bank 1-4.

17. The alleged plaintiff named in the Proposed Amended Complaint, TBW, was closed in August of 2009 by the F.B.I., and the F.D.I.C. for fraud, and later liquidated in bankruptcy in August of 2011. **Ex. 23** and **25**. **Facts** related to TBW 1-6.

18. On February 13, 2011, MERS, as nominee for TBW, executed an assignment of Mortgage/Deed to loan 1786401, to TBW during TBW bankruptcy. Ex. 19. **Facts** related to purported Liens on Plaintiffs Title 1-6.

19. However, TBW did not disclose the mortgage and note to loan 1786401 in their asset schedules A, B, and C, to the U.S. Bankruptcy Trustee. **Ex. 24**. **Facts** related to TBW.

20. After allegedly substituting Pierce and Associates as counsel for the plaintiff in foreclosure action, Defendant Hinshaw and Culbertson LLP, and attorney Daniel L. Morriss have continued in the deceptive practices of RoundPoint former agents. **Facts** related to foreclosure action 31-44.

21. In that Defendants Hinshaw and Culbertson LLP, and attorney Daniel L. Morriss, named TBW as the plaintiff in Proposed Amended Complaint, a defunct and liquidated company, as the injured and moving party.

22. The record of this case indicates this is all part of a scheme by the Defendants, originating with Defendant RoundPoint, to receive multiple payment for loan 1786401.

23. The facts submitted here against the Defendants goes beyond a mere appearance of impropriety.

24. The Defendants are all of the people who knew, or should have known, the details of this fraudulent scheme against Plaintiff.

25. Defendants Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, have a duty to objectively review the information submitted by their clients and to make a diligent inquiry into the facts of the matter before signing and filing a complaint.

26. The actions, or lack thereof, of RoundPoint, Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, are egregious, pervasive, and deceptive.

27. Plaintiff has been harmed by the actions of the Defendants.

28. Plaintiff has been harassed and oppressed into investing 416 hours in research, and in the drafting and filing of pleadings, to defend himself against the foreclosure action brought against Plaintiff.

29. Defendants RoundPoint, Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, are liable to the Plaintiff for actual damages, punitive damages, equitable relief, and litigation costs. 815 ILCS § 505/10a.

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court award Plaintiff Actual damages, punitive damages, exemplary damages, litigation costs, and costs of suit.

## COUNT 4

**Civil Conspiracy / Concert of Action** - as against Defendants RoundPoint, Pierce and Associates, Richard M. Rosenbaum in his capacity as agent of Colonial Bank and signer of the complaint, Hinshaw and Culbertson LLP, and Daniel L. Morriss in his capacity as agent of TBW and signer of amended complaint.

1. Plaintiff re-states and incorporates the following sections herein: Introduction, Jurisdiction, Parties, and Factual Allegations.

2. Civil Conspiracy involve two or more persons who combine for the purpose of accomplishing, by their concerted action, either a lawful purpose by unlawful means or an unlawful purpose by lawful means.

3. The Defendants, originating with RoundPoint, and Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss,

had a tacit understanding of the scheme to defraud Plaintiff.

4. On September 10, 2012, Defendant RoundPoint caused to be filed Complaint to Foreclose Mortgage against Plaintiff, by and through Defendant Pierce and Associates, in the Circuit Court of Cook County, IL.. **Ex. 5** A and B.

5. On or around September 26, 2012, Plaintiff received Notice of Institution of foreclosure proceedings from Defendant Pierce and Associates for Plaintiffs' alleged default of purported loan 1000033652. **Ex. 6.**

6. Plaintiff has never completed a financial transaction with Defendant RoundPoint, or anyone else, for purported loan 1000033652. **Facts** related to purported loan 1000033652, 1-21.

7. Plaintiff has never authorized anyone to use Plaintiff's personal identifying information to enter into an agreement with anyone for purported loan 1000033652.

8. However, attached to Complaint to Foreclose Mortgage are the loan documents to loan 1786401.

9. Pursuant to the language stated within the Mortgage and Note to loan 1786401, there are no provisions stated therein which allow for neither the creation of a new loan out of the existing loan nor the altering of the existing loan number. **Ex. 10**, **A** and **B**. Mortgage and Note.

10. Defendants Pierce and Associates, and Richard M. Rosenbaum, working in concert with Defendant RoundPoint, knew or should have known that these were two different loans, proceeded with filing the Complaint to Foreclose Mortgage anyway, in the name of Colonial Bank. **Ex. 5. Facts** related to Colonial Bank 1-4.

11. Wherein said complaint, no explanation is provided as to how loan 1786401, and purported loan 1000022652 are related.

12. After being ordered by the Circuit Court to respond to Plaintiffs' motions and objections, wherein the issues of deception and fraud were raised, Defendant Pierce and Associates failed to comply, and allegedly, according to Defendant Hinshaw and Culbertson LLP, and Daniel L. Morriss, withdrew from the case. **Facts** related to Foreclosure action 17-28.

13. However, the record in the foreclosure action does not reflect a motion to withdraw from Defendant Pierce and Associates, neither has Plaintiff received a motion for withdrawal from Defendant Pierce and Associates.

14. Further, Defendant Hinshaw and Culbertson LLP, filed its appearance as additional counsel.

15. In furtherance of the scheme to defraud Plaintiff, Defendant Hinshaw and Culbertson LLP, and Defendant Daniel L. Morriss, filed or caused to be filed, Proposed Amended Complaint to Foreclose Mortgage on June 18, 2013. **Ex. 9.**

16. Therein Proposed Amended Complaint, no explanation is provided as to how loan 1786401, and purported loan 1000033652, are related.

17. Once again the loan documents to loan 1786401, with the exception of the Note, were attached to Proposed Amended Complaint. Ex. 9 A, B, C. **Facts** related to Foreclosure action 37-44.

18. However, TBW is now named the plaintiff, and injured party, in the Proposed Amended Complaint. **Facts** related to TBW 1-6.

19. Defendant RoundPoint has ignored Plaintiffs' Cease and Desist letter, Q.W.R., and Plaintiffs Dispute and Request for Validation of Debt and proceeded in hiring agents Pierce and Associates, Richard M. Rosenbaum, Hinshaw and Culbertson LLP, and Daniel L. Morriss, to file or caused to be filed, foreclosure complaints against Plaintiff after former agent, Codillis and Associates, placed their institution of foreclosure proceedings file on hold until purported debt could be verified. **Ex. 3, 4, 5,** and **15. Facts** related to foreclosure action 3-6.

20. Defendant RoundPoint transferred Plaintiffs' personal identifying information to agents of RoundPoint who in turn filed into public record Plaintiffs information related to Plaintiffs' alleged default of purported loan 1000033652. **Ex. 5, 9,** and **19.**

21. Defendant RoundPoint has caused a lien to be recorded against Plaintiffs' property title with the C.C.R.D., under the guise of TBW, as part of the scheme connected to purported loan 1000033652. **Ex. 19.**

22. Defendant RoundPoint has not, and, can not, produce a signed agreement between Plaintiff and Defendant RoundPoint, or between Plaintiff and any other party, for the purported loan 1000033652.

23. Defendant RoundPoint has solicited Plaintiff multiple times, via U.S. Mail, to enter into a formal agreement with RoundPoint for purported loan 1000033652 since Complaint to Foreclose Mortgage was filed September 10, 2012. **Ex. 22**.

24. Plaintiffs' identity is being unlawfully used by all of the named Defendants in a fraudulent scheme to obtain multiple payments for loan 1786401 under the guise of purported loan 1000033652. 18 U.S.C. § 1028(a)(1). **Ex. 17**. **Facts** related to loan 1786401, 1-29.

25. All of the named Defendants have acted intentionally, purposely, and without lawful justification.

26. Plaintiff has been injured by Defendants unauthorized use of Plaintiffs' identity for purported loan 1000033652.

27. As a consequence of the Defendants actions, Plaintiffs' has been harassed and oppressed into investing 416 hours in research, and in the drafting and filing of pleadings, to defend himself against the foreclosure action brought against Plaintiff in the Circuit Court of Cook County, in addition to the time and costs involved to bring Plaintiffs' claims before this Court.


**WHEREFORE**, Plaintiff respectfully pray this Honorable Court award Plaintiff Actual damages, punitive damages, litigation costs, and any other relief this Court deems just and appropriate.

**COUNT 5**

**Unlawful Clouding of Title / Quiet Title** – As against Defendant RoundPoint.

1. Plaintiff re-states and incorporates the following sections herein; Introduction, Jurisdiction, Parties, and Factual Allegations.

2. In June 26, 2007, Plaintiff acquired his interest in the Property commonly known as 4852 Turner Court, Country Club Hills, Illinois. **Ex. 10**. **Facts** related to loan 1786401, 1-29.

3. Plaintiffs' home is a single family residence.

4. Plaintiff acquired good title to Plaintiffs home by virtue of Warranty Deed executed by Haran Custom Homes June 26, 2007. **Ex. 31**.

5. Defendant RoundPoint, as the alleged Servicer and driving force behind the foreclosure action against Plaintiff and Plaintiffs' home, allege or alleged an interest in loan 1786401. **Ex. 6 and 20.**

6. On February 13, 2011, MERS, as Nominee for TBW, executed purported assignment of the Mortgage/Deed of Trust to loan 1786401, to TBW. **Ex. 19**.

7. MERS 02-13-2011 purported assignment to TBW was recorded at the CCRD on March 15, 2011, as Document #1107403026. 7.

8. MERS 02-13-2011 purported assignment appears to have been signed by MERS Vice-President, Melissa Long.

9. In August of 2009, TBW was raided and closed by the F.B.I. and F.D.I.C. for Fraud. **Facts** related to TBW 1-6.

10. The F.D.I.C. was appointed as Receiver over TBW assets.

11. August 24, 2009, TBW filed chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Middle District of Florida, case #3:09-bk-1077047-JAF. **Ex. 30**.

12. TBW did not disclose the mortgage and note to loan 1786401 as an asset in TBW asset schedules A, B, or C, to the U.S. Bankruptcy Trustee. **Ex. 24**.

13. TBW assets were later liquidated in bankruptcy. The effective date of TBW 3rd Amended Joint Plan of Liquidation is August 10, 2011. True and correct copy attached. **Ex. 25**.

14. There is no transfer evidencing any transfers of loan 1786401 from TBW to MERS after receiving assignment from MERS 11-14-2008 before transfer of loan 1786401 to Colonial Bank. **Ex. 12 and 13**.

15. MERS therefore lacked the capacity, as nominee for TBW, to execute the 02-13-2011 assignment to TBW.

---

7. The record of this case indicates MERS was acting on behalf of Defendant RoundPoint when MERS executed the 02-13-2011 assignment of loan 1786401 to TBW. Prior to purported assignment, TBW 2nd Amended Joint Plan of Liquidation was filed in TBW bankruptcy case on 11-12-10. RoundPoint is the true driving force behind foreclosure action filed against Plaintiff in the Circuit Court of Cook County wherein the mortgage and note to 1786401 have been submitted as evidence. **Ex. 5 A** and **B, 6, 9 A** and **C, and 29.**

**16.** Furthermore, MERS authority to execute assignments on behalf of TBW was extinguished upon TBW bankruptcy filing August 24, 2009. **Ex. 30**.

**17.** The purported 02-13-11 assignment is a cloud on Plaintiffs' title.

**18.** The purported 02-13-11 assignment of loan 1786401 to TBW is a violation of 720 ILCS § 5/32-13(a).

**19.** As such, the loan 1786401 as an asset of TBW is a nullity and void.

**20.** As such, the Challenge Defendant RoundPoint purported interest in loan 1786401, and in Plaintiffs' home, should be quieted in favor of Plaintiff.


**WHEREFORE,** Plaintiff respectfully pray this Honorable Court award a declaratory judgment and quiet title to the loan 1786401 and the Property, 4852 Turner Court Country Club Hills, Illinois, in favor of Plaintiff.

Date: September 3, 2013

Respectfully Submitted,

David Cocroft, Plaintiff


David Cocroft, Pro Se

4852 Turner Court

Country Club Hills, IL 60478

takethefirststep.david@yahoo.com

(708) 288-2161

## TABLE OF EXHIBITS

1. Notice of Default.
2. Notice of Institution of Foreclosure proceedings –Codillis and Associates.
3. Dispute and Request for Validation of Debt.
4. Acknowledgement of receipt of Dispute and Request for Validation of Debt letter – Codillis and Associates.
5. Complaint for the Foreclosure of Mortgage, A and B – Colonial Bank.
6. Notice of Institution of Foreclosure proceedings – Pierce and Associates.
7. February 13, 2013 Circuit Court Order.
8. May 6, 2013 Circuit Court Order.
9. Proposed Amended Complaint, A, B, and C – TBW.
10. Original Mortgage, Rider, and Note to Loan 1786401.
11. TBW 2008 Foreclosure Complaint and exhibits.
12. MERS 2008 assignment of mortgage to loan 1786401, to TBW.
13. Notice of Transfer of Loan 1786401 from TBW to Colonial Bank.
14. Cease and Desist letter to TBW and Colonial Bank.
15. Cease and Desist letter to RoundPoint.
16. Acknowledgement of receipt of Cease and Desist letter from RoundPoint.
17. Notice of Loan 1786401 is Paid Off from QBE Insurance.
18. Circuit Court Order to Dismiss TBW 2008 Foreclosure Case against Plaintiff.
19. MERS 2011 assignment of Mortgage to Loan 1786401 to TBW.
20. Notice of Change of Servicer.
21. Q.W.R. to RoundPoint.
22. RoundPoint Offers to Modify purported loan 1000033652.
23. U.S. Dept. of Justice Public Affairs News Report of former officers of TBW.
24. TBW Asset Disclosure Schedules A, B, and C, to the U.S. Bankruptcy Trustee.
25. Bankruptcy Court Confirmation Order of TBW 3rd Amended Joint Liquidation Plan and TBW 3rd Amended Joint Liquidation Plan.
26. Judgment and Opinion of the Court F.D.I.C. (as Receiver for Colonial Bank) v. Colonial Bancgroup (Page 3 of Opinion of the Court.).
27. Office of Inspector General of the F.D.I.C. – Material Loss Review for Colonial Bank.
28. Department of Justice news report of prison terms of former officers of Colonial Bank.
29. TBW 2ND Amended Joint Liquidation Plan.
30. TBW Bankruptcy Petition.
31. Warranty Deed.

# Exhibit 1

## Notice of Default



**ROUNDPOINT**
MORTGAGE SERVICING CORPORATION

Sent Via Certified Mail
7196 9006 9295 8235 5426

02/24/2012

DAVID COCROFT
VEYNELCA COCROFT
4852 TURNER CT
COUNTRY CLUB HILLS, IL 60478-5828

Loan Number:      1000033652
Property Address:  4852 TURNER
                   COUNTRY CLUB HILLS, IL 60478

### NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear David Cocroft and Veynelca Cocroft:

RoundPoint Mortgage Servicing Corporation (herein as "RoundPoint") is currently servicing your Mortgage Loan that is secured by the above referenced property. You are hereby formally notified that the mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

The loan is due for June 1, 2008 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $256,223.56, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | June 1, 2008 |
| Current Monthly Payment: | | $5,441.98 |
| Total Monthly Payments Due: | | $244,889.10 |
| Late Charges: | | $876.31 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $110,458.15 |
| | Partial Payment Balance: | -$0.00 |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | $256,223.56 |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that RoundPoint Mortgage Servicing paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $256,223.56. If the default, together with additional payments that subsequently become due, is not cured by March 25, 2012, RoundPoint may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, RoundPoint offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar situation. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at (877) 426-8805. WE ARE VERY INTERESTED IN ASSISTING YOU.



P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | (877) 426-8805
www.RPMServicing.com
Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.
Colorado Manager, Inc., 80 Garden Center, Suite 3 Broomfield CO 80020| Ph: (303) 920-4763

The default can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by March 25, 2012. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. Please contact our Collection Department at (877) 426-8805 (option 1) to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

> RoundPoint Mortgage Servicing Corporation
> PO Box 19389
> Charlotte, NC 28219-9389

You may also make a payment by wire transfer with the following information:

| | |
|---|---|
| Bank: | Bank of America |
| Account: | RoundPoint Mortgage Servicing Corporation |
| ABA: | 026009593 |
| Account No.: | 000655371906 |

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling (877) 426-8805.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call (800) 569-4287.

This matter is very important. Please give it your immediate attention.

Sincerely,

RoundPoint Mortgage Servicing Corporation
PO Box 19409
Charlotte, NC 28219-9409
(877) 426-8805

Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.

Colorado Manager, Inc.
80 Garden Center, Suite 3
Broomfield, CO 80020
Ph: 303-920-4763

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT ROUNDPOINT MORTGAGE SERVICING CORPORATION IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.

P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | (877) 426-8805
www.RPMServicing.com
Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.
Colorado Manager, Inc., 80 Garden Center, Suite 3 Broomfield CO 80020| Ph: (303) 920-4763

Page 2

# Exhibit 2

**Notice of Institution of Foreclosure proceedings –Codillis and Associates**



**LAW OFFICES**

**CODILIS & ASSOCIATES, P.C.**
I L L I N O I S

15W030 North Frontage Road
Suite 100
Burr Ridge, Illinois 60527

P: (630) 794-5300 / FAX: (630) 794-9090

April 9, 2012

David Cocroft
4852 Turner
Country Club Hills, IL 60478

RE:    Mortgage Arrearage
        Creditor: Taylor Bean & Whitaker Mortgage Corp.
        Servicer: RoundPoint Mortgage Servicing Corp
        Loan # 1000033652
        Our File 14-12-10220

**NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT**

Please be advised that your account has been referred to our firm for the institution of foreclosure proceedings against 4852 Turner Court, Country Club Hills, IL 60478. Our firm is attempting to collect the debt that you owe the present creditor and any information we obtain will be used for that purpose.

In accordance with the above Act, you are hereby notified of the following information:

1. The amount of the debt: As of the date of this letter, you owe $824,327.97. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (630) 794-5300.

2. The name of the creditor to whom the debt is owed: Taylor Bean & Whitaker Mortgage Corp..

3. Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, our firm will assume that it is valid.

4. If you notify us in writing within thirty (30) days after receipt of this Notice that the debt or any portion thereof is disputed, we will obtain and mail you proof of the debt.



5. Also, if within the same 30 day period, you request in writing the name and address of the original creditor, if different from the current creditor, we will furnish that information too.

6. The law does not require us to wait until the end of the thirty (30) day period before filing a foreclosure proceeding. If, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

Sincerely,

CODILIS AND ASSOCIATES, P.C.

By: _____

Cari A. Kauffman
ARDC# 6301778

C&A No.            14-12-10220
Client Loan No.    1000033652

**NOTE: PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT YOU ARE ADVISED THAT THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# Exhibit 3

**Dispute and Request for Validation of Debt**

US Certified Mail #7011 1570 0002 7192 4568

**Date:** April 21, 2012

**To:** Taylor, Bean and Whitaker Mortgage Corp.
RoundPoint Mortgage Servicing Corp.
c/o Codilis and Associates, P.C.,
Counsel for Complainants

**Re:** Alleged Loan #1000033652
Codilis File #14-12-10220

## DISPUTE AND REQUEST FOR VALIDATION OF DEBT

Please be advised that I, David Cocroft, do not have an account #1000033652 with Taylor, Bean and Whitaker Mortgage Corp., or, RoundPoint Mortgage Servicing Corp.. I hereby dispute the validity of account #1000033652 and, I request strict validation thereof, pursuant to FDCPA 15 USC § 1692g(b) and, RESPA 12 USC § 2605(e) (1),(2),(3). I submit, in support of my claim, the following:

### DISPUTE OF VALIDITY OF DEBT

1. Original 1st mortgage account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063, was rescinded on 5/19/2009, for fraudulent misrepresentation of disclosures. Rescission documents were recorded at Cook County Recorder of Deeds as document numbers #0914757199 and, #0914757198. See **Exhibit A**

2. Account #1786401, was sold to Colonial Bank August 10, 2009, whom is not disclosed as a moving party in Codilis and Associates, P.C., Notice of referral for the institution of foreclosure. See **Exhibit B**

3. Account #1786401, was then "PAID IN FULL." See **Exhibit C**

4. I could not, with reasonable diligence, find any record of Colonial Bank assigning account #1786401 back to Taylor, Bean and Whitaker Mortgage Corp., hereafter referred to as "TBW," or MERS, whereby granting MERS the capacity to execute assignments, as nominee for TBW. to TBW, on 02/13/2011, recorded with Cook County Recorders of Deeds on 03/15/2011, as document numbers #1107403026 and #1107403036. .

5. Alleged creditor, and now defunct business, TBW was raided and shut down by the F.B.I. in the month of August 2009. The FDIC was appointed receiver over TBW assets.

6. TBW filed chapter 11 bankruptcy in the US Bankruptcy Court for the Middle District of Florida on August 24, 2009, Case #3:09-bk-1077047-JAF. My home, 4852 Turner Court, Country Club Hills, IL is not included, as required, as TBW asset, in schedule A, B, or C, disclosures.

7. Alleged creditor, "TBW," avowed to be a real party in interest to mortgage account #1786401, in Taylor, Bean and Whitaker Mortgage Corp. v David

Pg1

Cocroft, case #08 CH 40952. Codilis and Associates, P.C. was counsel of record for TBW in this proceeding.

8. TBW filed chapter 11 bankruptcy in the US Bankruptcy Court for the Middle District of Florida on August 24, 2009, case #08 CH 40952 was dismissed October 15, 2009. If TBW was a real party in interest to the mortgage and note #1786401, TBW was required to include my home as an asset in either schedule A, B, or C, to the US Bankruptcy Court.

9. RoundPoint Mortgage Servicing has made the claim of being servicer for loan #1000033652 not account #1786401. However, RoundPoint has refused to disclose to me how I am legally associated with, and liable for, account #1000033652.

10. On 02/15/2012, I delivered a Qualified Written Request to Roundpoint Mortgage Servicing via US Certified Mail, in accordance with RESPA 12 USC § 2605(e) (1),(2),(3). Wherein, I requested proof of RoundPoint capacity to be servicer of mortgage account #1786401, which Roundpoint claims to be account #1000033652. I also requested RoundPoint to disclose the identity of the unknown party who allegedly granted RoundPoint the authority to be servicer of mortgage account #1786401. To date, RoundPoint has failed to comply with RESPA 12 USC § 2605(e) (1),(2),(3).See **Exhibit D**

11. Alleged lender "TBW" and, alleged servicer, "RoundPoint Mortgage Servicing," have also failed to comply with TILA 15 USC § 1635(b) on rescission. TBW and RoundPoint Mortgage Servicing, have each received Notice of Rescission of mortgage account #1786401 / dated #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063. Notice of Rescission was delivered to TBW on May 20, 2009, via UE Certified mail return receipt #7006 0810 0002 8290 2063, and to RoundPoint Mortgage Servicing Corp., Attn: John Delponti, C.E.O., on December 7, 2009, via US Registered Mail #RB 602 414 032 US.

12. TBW and RoundPoint Mortgage Servicing are fraudulently misrepresenting themselves as creditor, servicer, and/or owners of mortgage account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063. Account #1786401 is being misrepresented as account #1000033652 for the purpose of facilitating a fraudulent debt lien and foreclosure action, against my home, 4852 Turner Court Country Club Hills, IL.

## VERIFICATION DEMANDS

1. I demand strict proof from Codilis and Associates, P.C. and RoundPoint Mortgage Servicing Corp. that TBW is not a defunct business.

2. I demand strict proof from TBW and Roundpoint Mortgage Servicing, that account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063, was not sold to Colonial Bank on August 10, 2009.

3. I demand strict proof from TBW and Roundpoint Mortgage Servicing, that mortgage account #1786401 / mortgage #100029500017864012 dated June 26,

2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063, is not paid off.

4. I demand strict proof of TBW current status as a real party in interest to mortgage account #1786401 / mortgage #100029500017864012, dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document 0726911063.

5. I demand strict verification from Roundpoint Mortgage Servicing, of its capacity to be servicer of mortgage account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063.

6. I demand strict verification of authority of the unknown party who appointed RoundPoint as servicer of mortgage account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063.

7. I demand strict verification from Roundpoint Mortgage Servicing, of RoundPoint Mortgage Servicing Corp. capacity and/or authority, to create a new account, account #1000033652, and make David Cocroft a party to account #1000033652, allegedly secured by David Cocroft home, without the consent, signature, or knowledge of David Cocroft, to initiate a fraudulent foreclosure action.

8. I demand the true identity and, strict verification of authority, of the unknown party who granted MERS, as nominee for TBW, the capacity and/or authority, to execute assignments of mortgage account #1786401 / mortgage #100029500017864012 dated June 26, 2007, recorded 9/26/2007 at Cook County Recorder of Deeds as document #0726911063, to TBW on 02/13/2012, recorded with Cook County Recorders of Deeds as document numbers #1107403026 and #1107403036. TBW repudiated relationship with MERS when TBW filed bankruptcy 08/24/2009. At that time, US Bankruptcy Trustee for Middle District of Florida was granted jurisdiction over TBW assets, not MERS.

Be advised, there is pending litigation regarding the subject matter in this Dispute and Request for Validation of Debt, **David Cocroft v Taylor, Bean and Whitaker Mortgage Corp. et al,** case #10 CH 17756, Chancery Division, Circuit Court of Cook County, IL..

Federal Rule of Civil Procedure 11 and IL Supreme Court Rule 137, allows for sanctions against law firms and their attorneys, for filing frivolous lawsuits. In Illinois, pursuant to IRPC Rule 3.1, filing frivolous and defamatory lawsuits can warrant disbarment. See **In re Jaffree, 444 N.E.2d 143, 149 (Ill. 1982).** See **Brubakken v Morrison, 240 Ill App 3d 680, 608 N,E,2d 471 (1st Dist. 1992).** See **Pagano v Rand Materials Handling Equipment Co, Inc, 249 Ill App 3d 995, 621 NE2d 26 (1st D 1993).** See also **Rankin v Heidlebaugh, 321 Ill App 3d 255, 747 NE2d 483 (5th Dist. 2001).**

In light of the fact that five former officers of TBW including; former Chairman and Owner, C.E.O., President, Treasurer, and Sr. Financial Analyst, have been sentenced to prison terms for their role in a more than $2.9 billion fraud scheme that contributed to the failure of TBW business, it is imperative, and required by IRPC Rule 3.1 and FDCPA 15 USC § 1692g(b), that Codilis and Associates, P.C., exercise due diligence to verify all

pertinent facts submitted in section, Dispute of Validity of Debt, prior to filing a foreclosure action against David Cocroft in Circuit Court of Cook County, IL..

Respectfully,

David Cocroft, Respondent

David Cocroft
4852 Turner Ct.
C.C. Hills, IL 60478
takethefirststep.david@yahoo.com
(708)288-2161

## CERTIFICATION OF SERVICE

I, **David Cocroft**, a non-attorney, Certify that a true and correct copy of the foregoing, **DISPUTE AND REQUEST FOR VALIDATION OF DEBT**, was mailed postage prepaid, via US Certified Mail **#7011 1570 0002 7192 4568,** on April 21, 2012, to:

Codilis and Associates, P.C.
15W030 North Frontage Road
Suite 100
Counsel for Complainants
Burr Ridge, IL 60527

David Cocroft, Respondent

Pg 4

**U.S. Postal Service**
**CERTIFIED MAIL... RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.70 |
| Certified Fee | | $2.95 |
| Return Receipt Fee (Endorsement Required) | | $2.35 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $7.00 |

Postmark Here

04/21/2012

Sent To: *Codilis and Associates, PC*
Street, Apt. No.; or PO Box No. *15 W030 N Frontage Rd #100*
City, State, ZIP+4 *Burr Ridge, IL 60527*

PS Form 3800, August 2006          See Reverse for Instructions

7011 1570 0002 7192 4568

---

MATTESON PO
MATTESON, Illinois
604439998
1615500443-0097
04/21/2012 (800)275-8777 11:20:11 AM

======================================
======= Sales Receipt =======

| Product Description | Sale Unit Qty Price | Final Price |
|---|---|---|
| WILLOWBROOK IL 60527 Zone-1 First-Class Large Env 4.70 oz. Expected Delivery: Mon 04/23/12 | | $1.70 |
| Return Rcpt (Green Card) | | $2.35 |
| Certified | | $2.95 |
| Label #: | 70111570000271924568 | |

========
Issue PVI:                              $7.00

========
Total:                                 $7.00

Paid by:
Cash                                  $20.00
Change Due:                          -$13.00

Order stamps at usps.com/shop or
call 1-800-Stamp24.  Go to
usps.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.
******************************************
******************************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
******************************************
******************************************

Bill#:1000301696869
Clerk:13

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business
******************************************
******************************************
       HELP US SERVE YOU BETTER

            Go to:
https://postalexperience.com/Pos

   TELL US ABOUT YOUR RECENT
       POSTAL EXPERIENCE

# Exhibit 4

**Acknowledgement of receipt of Dispute and Request for Validation of Debt letter – Codillis and Associates.**



**CODILIS & ASSOCIATES, P.C.**
I L L I N O I S

**LAW OFFICES**

15W030 North Frontage Road
Suite 100
Burr Ridge, Illinois 60527

P: (630) 794-5300 / FAX: (630) 794-9877

April 26, 2012

David Cocroft
4852 Turner Court
Country Club Hills, IL 60478

     RE: Taylor Bean & Whitaker Mortgage Corp. V. David Cocroft
     Loan #: 1000033652
     Our File No.: 14-12-10220

Dear David Cocroft,

Please be advised that we acknowledge receipt of your recent correspondence regarding the above file and have requested additional information from our client. Upon receipt of the information requested, we will provide the necessary response to your letter. Until that time, our file has been placed on hold.

Please be further advised that we are not the agent of Taylor Bean & Whitaker Mortgage Corp. or RoundPoint mortgage for the purposes of accepting a Qualified Written Request.

If you have any questions regarding this letter, please contact our office.

     Sincerely,
     Codilis & Associates, P.C.

     By: _____

**NOTE: This law firm is deemed to be a debt collector.**

# Exhibit 5

**Complaint for the Foreclosure of Mortgage, A and B –
Colonial Bank**

STATE OF ILLINOIS                                   ATTY NO. 91220

COUNTY OF COOK

                IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                     COUNTY DEPARTMENT - CHANCERY DIVISION

COLONIAL BANK                          )
                                       )
                          PLAINTIFF    ) NO.
                                       )
                                       ) 4852 TURNER COURT
                                       ) COUNTRY CLUB HILLS, IL
                                       ) 60478
                                       )
              VS                       ) JUDGE
                                       )
DAVID COCROFT A/K/A DAVID COCROFT SR;  )
VEYNEICA COCROFT A/K/A VEYNELCA COCROFT )
; CITIBANK N.A. S/I/I TO CITIBANK      )
(SOUTH DAKOTA) N.A.; UNKNOWN TRUSTEE OF )
THE DAVID COCROFT LIVING TRUST; UNKNOWN )
BENEFICIARIES OF THE DAVID COCROFT     )
LIVING TRUST; TAYLOR, BEAN & WHITAKER  )
MORTGAGE CORP.; UNKNOWN OWNERS AND NON )
RECORD CLAIMANTS ;                     )
                                       )
                          DEFENDANTS   )

12CH34114

<u>COMPLAINT TO FORECLOSE MORTGAGE</u>

          For its Complaint Plaintiff says:

1. Plaintiff, COLONIAL BANK files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described, pursuant to 735 ILCS 5/15-1101 et. seq. of the Illinois Code of Civil Procedure, and joins persons named in the caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a true copy of the Mortgage.  Attached as "EXHIBIT B" is a true copy of the Note secured thereby.

3.    Information concerning said Mortgage:

      (a)  Nature of the instrument: Mortgage.

      (b)  Date of the Mortgage: June 26, 2007

      (c)  Name of the mortgagors or grantors:

           DAVID COCROFT A/K/A DAVID COCROFT SR;

(d)   Name of the mortgagee, trustee or grantee in the Mortgage:

M.E.R.S., INC. AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.

(e)   Date of Recording or Registering: September 26, 2007

(f)   Place of Recording or Registering:

Office of the Recorder of Deeds of Cook County, Illinois

(g)   Identification of Recording: Document No. 0726911063

(h)   Interest Subject to the mortgage: Fee Simple.

(i)   Amount of Original Indebtedness: $572,000.00

(j) Capacity in which Plaintiff brings this suit: Plaintiff is the holder of the Mortgage and Note.

(k)   Legal description of mortgaged premises:

LOT 55 IN CASTLE DARGAN LAKES ESTATES, BEING A SUBDIVISION OF LOT 2 AND PART OF LOTS 5, 8 AND 9 IN MARYCREST, BEING A SUBDIVISION OF PART OF THE NORTHEAST QUARTER AND PART OF THE SOUTHEAST QUARTER OF SECTION 4, TOWNSHIP 35 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 5, 2005 AS 0521719050, IN COOK COUNTY, ILLINOIS.

COMMONLY KNOWN AS:

4852 TURNER COURT
COUNTRY CLUB HILLS, IL 60478

TAX ID# 31-04-415-007-0000

(l) Statement as to amount now due:  After all payments received have been applied, mortgagors are now in default for the monthly payments for June 2008 through the present; the balance due on the Note and the Mortgage is the total of the principal balance of $572,000.00, plus interest, costs and fees, and advances if any, made by the plaintiff.  The current per diem interest rate is $97.95.

(m)   Name of present owners of said premises:

UNKNOWN TRUSTEE OF THE DAVID COCROFT LIVING TRUST;

(n) Names of persons in addition to said owners, but excluding any non-record claimants as defined in the Illinois Mortgage and Foreclosure Act who are joined as Defendants and whose interest in, or lien on, the mortgaged rea

estate is sought to be terminated:

VEYNEICA COCROFT A/K/A VEYNELCA COCROFT , by virtue of
the fact that, upon information and belief,
he/she/they may have some interest in the subject real
estate; the interest of this Defendant, if any, is
unknown to the Plaintiff but Plaintiff alleges this
Defendant's interest is subordinate and inferior to
the lien of its Mortgage.

CITIBANK N.A. S/I/I TO CITIBANK (SOUTH DAKOTA) N.A.,
by virtue of Memorandum of Judgment against DAVID
COCROFT AKA DAVID COCROFT SR, rendered in Case No. 09M1
134470, in the Circuit Court of COOK County, IL, and
recorded in the Office of the Recorder of Deeds of
COOK County IL on 03/05/2010, as Document No.
1006440009, in the sum of $10,858.23 . The interest of
this Defendant is subordinate to the Plaintiff herein.

TAYLOR, BEAN & WHITAKER MORTGAGE CORP. by virtue of
mortgage executed by DAVID COCROFT  to M.E.R.S., INC.
AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.,
recorded in the Office of the Recorder of Deeds, COOK
County, Illinois, as Document No. 0726911064, to secure
a note in the principal sum of $71,500.00; subsequently
assigned to this defendant by doc. no. 1107403036 recorded
on 03/15/2011. Said mortgage is inferior to the Plaintiff.

(o)  Names of persons claimed to be personally liable for
     deficiency unless personal liability is discharged in a
     Bankruptcy proceeding, or otherwise released
     DAVID COCROFT A/K/A DAVID COCROFT SR;

(p)  Plaintiff seeks to include in the Judgment the Plaintiff's
     attorneys' fees, costs and expenses.

4.   Plaintiff alleges that in addition to persons designated by name
     herein and the Unknown Defendants referred to above, there are
     other persons, and/or non-record claimants who are interested in
     this action and who have or claim some right, title, interest or
     lien in, to or upon the real estate, or some part thereof, in
     this Complaint described, including but not limited to the
     following:

UNKNOWN OWNERS AND NON RECORD CLAIMANTS, IF ANY.

UNKNOWN BENEFICIARIES OF THE     TRUST WHICH IS THE LEGAL TITLE
HOLDER OF THE SUBJECT REAL ESTATE AS SET FORTH HEREIN PARAGRAPH
3(M), IF ANY.

That the name of each of such persons is unknown to the Plaintiff and

on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NON-RECORD CLAIMANTS.

5.  That should a deficiency result from the foreclosure sale of the subject property, Plaintiff may seek an In Personam or an In Rem deficiency judgment, unless the defendant(s) which are liable on the subject mortgage note have had personal liability on said note discharged in a Bankruptcy proceeding or if said liability has been otherwise discharged or released.

6.  That should the subject property be vacant, the Plaintiff may seek to have the Court find that the property is abandoned pursuant to 735 ILCS 5/15-1603, Illinois Code of Civil Procedure

7.  That the Plaintiff may seek appointment of Mortgagee in Possession or appointment of receiver.

    WHEREFORE, PLAINTIFF, COLONIAL BANK REQUESTS:

    1.  A Judgment of Foreclosure and Sale.

    2.  A Judgment for attorneys' fees, costs and expenses.

    3.  An Order Approving the Foreclosure Sale and an Order granting possession.

    4.  An In Personam or an In Rem Deficiency Judgment, if sought, unless defendant(s) have had personal liability on the subject mortgage note discharged in a Bankruptcy proceeding, or otherwise released.

    5.  An order granting a shortened redemption period, if sought.

    6   Appointment of Mortgagee in Possession or Receiver, if sought.

    7.  Such other and further relief as the Court deems just.


    COLONIAL BANK


    By: _____
                    PIERCE & ASSOCIATES
                       Its Attorneys

PIERCE & ASSOCIATES, Attorneys for Plaintiff, Suite 1300,
1 North Dearborn, Chicago, Illinois 60602
TEL.(312) 346-9088, FAX (312) 346-1557, PA1218206

This instrument was prepared by:

EXHIBIT
A

Name:

Address:
**Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave**
**Ocala, FL 34475**

After Recording Return To:
**CHICAGO TITLE COMPANY**
**15255 S. 94 AVENUE, STE 604, STE 604**
**ORLAND PARK                , IL**
**60462**

Doc#:  0726911063 Fee: $56.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 09/26/2007 11:23 AM Pg: 1 of 17

Office of Plaintiff's counsel
Pierce & Associates P.C.
redacted the SS# and/or
loan number.

[Space Above This Line For Recording Data]

# MORTGAGE

**MIN: 100029500017864012**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated **June 26, 2007**                        , together with all Riders to this document.

(B)  "Borrower" is **DAVID COCROFT,** MARRIED To Veynelca Cocroft

Borrower is the mortgagor under this Security Instrument.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D)  "Lender" is  **Taylor, Bean & Whitaker Mortgage Corp.**
Lender is a  **a Florida Corporation**                                                    organized and existing under
the laws of **FL**                                                    . Lender's address is
**1417 North Magnolia Ave, Ocala, FL  34475**

174C

(E)  "Note" means the promissory note signed by Borrower and dated **June 26, 2007**                        . The Note states that Borrower owes Lender **Five Hundred Seventy Two Thousand and no/100**
Dollars (U.S. $ **572,000.00**                    ) plus interest. Borrower has promised
to pay this debt in regular Periodic Payments and to pay the debt in full not later than  y 01, 2037                        .

(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**ILLINOIS**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9608L1 (0011)—MERS                    *(Page 1 of 12 pages)*

Form 3014 1/81
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



## BOX 334 CTI

P-16
B-14

Public Record

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) [specify]

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**ILLINOIS**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9608L2 (0011)—MERS

*(Page 2 of 12 pages)*

**Form 3014 1/01**

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Public Record

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the

| County | of | Cook | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**See Attached Exhibit A.**

which currently has the address of

**4852 TURNER**
[Street]

**COUNTRY CLUB HILLS** , Illinois **60478** ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3014 1/01
GREATLAND ■
ITEM T9608L3 (0011)—MERS
*(Page 3 of 12 pages)*
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.      **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.      **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

**ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9608L4 (0011)—MERS

*(Page 4 of 12 pages)*

**Form 3014 1/01**

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

**ILLINOIS**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                                          Form 3014 1/01

ITEM T9608L6 (0011)—MERS                          *(Page 5 of 12 pages)*                    GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Public Record

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9608L6 (0011)—MERS

(Page 6 of 12 pages)

Form 3014 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

Public Record

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9608L6 (0011)—MERS

*(Page 8 of 12 pages)*

Form 3014 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9008L9 (0011)—MERS

*(Page 9 of 12 pages)*

Form 3814 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

0726911063 Page: 10 of 17

an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9808L10 (0011)—9989L

(Page 10 of 12 pages)

Form 3814 1/01

GREATLAND ■

To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Public Record

cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9608L11 (0011)—0808B

*(Page 11 of 12 pages)*

Form 3014 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □Fax: 616-791-1131

Public Record

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DAVID COCROFT                    -Borrower

_____ (Seal)
                                 -Borrower

This Document is executed by _____ solely for the purpose of expressly waiving all homestead rights and any marital rights to the property as may be created under the laws of the state of Illinois

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Witness:                         Witness:

_____   _____


State of Illinois
County of COOK

This instrument was acknowledged before me on June 26, 2007 (date) by David COCROFT and VEYNELCA COCROFT

(name[s] of person[s]).

_____
                                 Notary Public

OFFICIAL SEAL
KATHRYN A MOEHLE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/07/08

ILLINOIS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01
ITEM T9608L12 (0011)—MERS          (Page 12 of 12 pages)          GREATLAND ■
                                                                  To Order Call: 1-800-530-9393 ☐Fax: 616-791-1131

# INITIAL INTEREST℠ ADJUSTABLE RATE RIDER
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this **26th** day of **June 2007** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to **Taylor, Bean & Whitaker Mortgage Corp.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**4852 TURNER**
**COUNTRY CLUB HILLS, IL 60478**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **6.2500%**. The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the first day of
The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Interest Change Dates**
The interest rate I will pay may change on the first day of **July 2012** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Two and One Quarter** percentage point(s) ( **2.2500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER—1-Year LIBOR Index (Assumable after Initial Period)—
Single Family—Freddie Mac UNIFORM INSTRUMENT          Form 5137 7/05

ITEM 1508L1 (0508)                          *(Page 1 of 4 pages)*          GreatDocs™
                                                                          To Order Call: 1-800-968-5775

Public Record

one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than **11.2500%** or less than **2.2500%**. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than Two percentage point(s) ( **2.0000%**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.2500%**.

(E)  Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.  **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  **UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER—1-Year LIBOR Index (Assumable after Initial Period)—
Single Family—Freddie Mac UNIFORM INSTRUMENT

Form 5137 7/05

GreatDocs™

ITEM 1606L2 (0508)                    (Page 2 of 4 pages)                    To Order Call: 1-800-968-5775

Public Record

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER—1-Year LIBOR Index (Assumable after Initial Period)—
Single Family—Freddie Mac UNIFORM INSTRUMENT                                    Form 5137 7/05

ITEM 1508L3 (0508)                          *(Page 3 of 4 pages)*          GreatDocs™
                                                                     To Order Call: 1-800-968-5775

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 4 of this Adjustable Rate Rider.

_____ (Seal)  X _____ (Seal)
DAVID COCROFT                  -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                               -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
                               -Borrower                                 -Borrower

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER—1-Year LIBOR Index (Assumable after Initial Period)—
Single Family—Freddie Mac UNIFORM INSTRUMENT                                  Form 5137 7/05
                                                                             GreatDocs™
ITEM 1508L4 (0508)                     (Page 4 of 4 pages)         To Order Call: 1-800-968-5775

Public Record

*Exhibit A*

0726911063 Page: 17 of 17

STREET ADDRESS: 4852 TURNER COURT

CITY: COUNTRY CLUB HILLS          COUNTY: COOK

TAX NUMBER: 31-04-401-012-0000

LEGAL DESCRIPTION:

LOT 55 IN CASTLE DARGAN LAKES ESTATES, BEING A SUBDIVISION OF LOT 2 AND PART OF LOTS 5, 8 AND 9 IN MARYCREST, BEING A SUBDIVISION OF PART OF THE NORTHEAST 1/4 AND PART OF THE SOUTHEAST 1/4 OF SECTION 4, TOWNSHIP 35 RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 5, 2005  ADN 0521719050, IN COOK COUNTY, ILLINOIS.

CLEGALD



**EXHIBIT B**

# INITIAL INTEREST℠ ADJUSTABLE RATE NOTE
### (1-Year LIBOR Index—Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**June 26, 2007**                     **COUNTRY CLUB HILLS**                     **Illinois**
[Date]                               [City]                                    [State]

**4662 TURNER**
**COUNTRY CLUB HILLS, IL 60478**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$572,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Taylor, Bean & Whitaker Mortgage Corp.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.2500%**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month on the first day of the month beginning on **August 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on **July 01, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. **$2,979.17**. This amount may change in accordance with subsection (C) below.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE—1-Year LIBOR Index (Assumable after Initial Period)—Single Family—Freddie Mac UNIFORM INSTRUMENT                     Form 5537 5/04 (rev. 7/05)

ITEM 1692L1 (0508)                     (Page 1 of 5 pages)                     GreatDocs™
To Order Call: 1-800-968-5775



**(C) Monthly Payment Changes**

The First P&I Payment Due Date is the first day of **August 2017**

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Beginning with the First P&I Payment Due Date my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note.

Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Interest Change Dates**

The interest rate I will pay may change on the first day of **July 2012** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Two and One Quarter** percentage point(s) ( **2.2500%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than **11.2500%** or less than **2.2500%**. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **Two** percentage point(s) ( **2.0000%**) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.2500%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of any new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE—1-Year LIBOR Index (Assumable after Initial Period)—Single Family—
Freddie Mac UNIFORM INSTRUMENT

Form 5537 5/04 (rev. 7/05)

GreatDocs™
To Order Call: 1-800-968-5775

*(Page 2 of 5 pages)*

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000**% of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE—1-Year LIBOR Index (Assumable after Initial Period)—Single Family—
Freddie Mac UNIFORM INSTRUMENT                                                                                    Form 5537 5/04 (rev. 7/05)

ITEM 1052.3 (0505)                                     (Page 3 of 5 pages)                          GreatDocs ™
                                                                                                   To Order Call: 1-800-968-5775

is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A)  UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B)  AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE—1-Year LIBOR Index (Assumable after Initial Period)—Single Family—
Freddie Mac UNIFORM INSTRUMENT                                                    Form 5537 5/04 (rev. 7/05)

GreatDocs™
To Order Call: 1-800-968-5775

(Page 4 of 5 pages)

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 5 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
DAVID COCROFT                   -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                       -Borrower

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker                              [Sign Original Only]
    Mortgage Corp.

_____
Erla Carter-Shaw, E.V.P.

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE—1-Year LIBOR Index (Assumable after Initial Period)—Single Family—
Freddie Mac UNIFORM INSTRUMENT                                    Form 5537 5/04 (rev. 7/05)

ITEM 1082L5 (0508)                    (Page 5 of 5 pages)                GreatDocs™
                                                              To Order Call: 1-800-968-5775

# Exhibit 6

**Notice of Institution of Foreclosure proceedings – Pierce and Associates**

PIERCE & ASSOCIATES
ATTORNEYS AT LAW
Suite 1300
1 North Dearborn
Chicago, Illinois 60602
(312) 346-9088

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

September 20, 2012


DAVID COCROFT A/K/A DAVID COCROFT SR; 4852 TURNER COURT;
COUNTRY CLUB HLS, IL 60478


RE: 4852 TURNER COURT, COUNTRY CLUB HILLS, IL 60478
Servicer: ROUNDPOINT MORTGAGE
Loan #: 1000033652-FNF

Dear Mortgagor(s)/Borrower(s):

This office has been hired by ROUNDPOINT MORTGAGE , the Servicer
of the above referenced mortgage loan to commence foreclosure
proceedings.

We are required by law to advise you of certain information as well
as your rights pursuant to the Fair Debt Collection Practices Act.
This information is as follows:

1.    The total amount of the debt due on the Mortgage and Note as
      of the date of this letter, is $ 849,662.76. Because of
      interest, late charges, and other charges that may vary from
      day to day, the amount due on the day you pay this amount may
      have increased. Therefore, if you pay the amount shown
      above, an adjustment may be necessary after we receive your
      check, in which event we will inform you before depositing
      the check for collection. For further information, write or
      call our office at (312)346-9088 and ask for the
      payoff-reinstatement department. Any funds to pay the total
      debt should be sent in the form of certified funds, cashiers
      check or money order to Pierce & Associates, P.C., attention
      Payoff and Reinstatement Dept., 1 N. Dearborn, Suite 1300,
      Chicago, Illinois, 60602.

2.    The name of the current Creditor to whom the debt is owed is
      COLONIAL BANK.

3.    Federal law gives you thirty days after you receive this
      letter to dispute the validity of the debt or any part of it.
      If you don't dispute it within that period, our office will
      assume that it's valid. If you do dispute it by notifying
      our office in writing, we will, as required by the law,
      obtain and mail to you proof of the debt. And if, within the
      same period, you request in writing the name and address of
      your original creditor, if the original creditor is different
      from the current creditor, our office will furnish that